## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMEY MCKEE,

           Plaintiff,

    v.

M. KNAPP, *et al.*,

           Defendants.

No. 4:23-CV-00963

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 23, 2024

Plaintiff Jamey McKee is a serial *pro se* litigant who was previously confined at the State Correctional Institution Rockview (SCI Rockview). He filed the instant *pro se* Section 1983[1] action, claiming that two SCI Rockview officials retaliated against him in violation of the First Amendment. Presently pending is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

## I.  BACKGROUND

McKee is currently incarcerated at SCI Somerset.[2] He is a prodigious prisoner litigant,[3] having filed seven civil rights cases in this Court in just over a

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* Doc. 14.

[3]  *See* Doc. 13 at 1 n.1 (listing most of McKee's civil rights cases).

year.  He lodged the instant lawsuit in June 2023.[4]  He alleges that defendants Unit Manager M. Knapp and Counselor D.A. Minnoia retaliated against him in violation of the First Amendment.

Specifically, McKee asserts that Knapp and Minnoia retaliated against him for filing a Prison Rape Elimination Act (PREA) report against Knapp in May 2022.[5]  McKee alleges that, upon being transferred from SCI Rockview to a different correctional institution on February 1, 2023, Knapp and Minnoia shipped four boxes of his personal property via UPS, causing $99.60 to be charged to (and removed from) his inmate account.[6]  McKee contends that his property should have been transferred "on the van" with him rather than shipped through UPS.[7]

McKee sues both Defendants in their individual and official capacities.[8]  He seeks retroactive declaratory relief acknowledging that his rights were violated and injunctive relief in the form of return of the $99.60 removed from his inmate account.[9]  He also requests compensatory and punitive damages.[10]

Defendants move to dismiss McKee's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[11]  That motion is fully briefed and ripe for disposition.

---

[4]    *See generally* Doc. 1.

[5]    *Id.* ¶¶ 13, 27-35, 44.

[6]    *Id.* ¶¶ 33-36, 39; Doc. 1-3 at 2.

[7]    Doc. 1 ¶ 34.

[8]    *Id.* at p. 1 (caption).

[9]    *Id.* ¶¶ 46, 47.

[10]   *Id.* ¶¶ 48-49.  McKee does not specify what "compensatory" damages he is seeking beyond return of the $99.60 to his inmate account.

[11]   *See generally* Doc. 12.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[12]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[13]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[14]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[15]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[16]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[17]  Finally, the court must review the presumed-truthful allegations

---

[12]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[13]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[14]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[15]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[16]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[17]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[18]
Deciding plausibility is a "context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."[19]

Because McKee proceeds *pro se*, his pleadings are to be liberally construed
and his complaint, "however inartfully pleaded, must be held to less stringent
standards than formal pleadings drafted by lawyers[.]"[20]  This is particularly true
when the *pro se* litigant, like McKee, is incarcerated.[21]

## III.   DISCUSSION

Defendants challenge the sufficiency of McKee's retaliation claim.  The
Court will review that claim and will *sua sponte* screen McKee's official capacity
claims and requested relief.

### A.   First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an
inmate still retains First Amendment protections when they are "not inconsistent"
with prisoner status or with the "legitimate penological objectives of the
corrections system."[22]  To state a First Amendment retaliation claim, a plaintiff
must plausibly plead that (1) "he was engaged in constitutionally protected

---

[18]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[19]  *Iqbal*, 556 U.S. at 681.
[20]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[21]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[22]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d
775, 781 (3d Cir. 2010)).

conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[23]

Defendants contend that McKee has not plausibly alleged an adverse action and that their purported conduct served a legitimate penological interest.[24]  The Court agrees with Defendants' first argument and therefore does not reach their second.

The gravamen of McKee's complaint is that he was charged for shipping his personal property during a prison transfer.  However, McKee has failed to plausibly allege facts that would demonstrate that his property was treated any differently than other similarly situated inmates.  McKee cites DOC Policy Statement 13.8.1: Access to Mental Health Care, § 12(I)(1), which states that "all of the inmate's property will be transported with him/her to the BMU" of the

---

[23] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[24] Defendants do not challenge that filing a PREA report is protected First Amendment conduct, but note that there is no First Amendment right to file frivolous or false reports or grievances. The Court agrees with Defendants that, if it were proven that McKee's May 2022 PREA report was frivolous or false, it would nullify McKee's retaliation claim.  *See United States v. Gonzalez*, 905 F.3d 165, 191-92 (3d Cir. 2018) (explaining that there is no First Amendment protection for defamation or "false statements of fact" (citation omitted)); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991) (noting that there is no First Amendment protection for "a statement [made] with knowledge of falsity or reckless disregard as to truth or falsity"); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (nonprecedential) (finding that retaliation claim must be dismissed because alleged protected conduct was a "patently frivolous" lawsuit and "[t]here is simply no constitutional right to prosecute frivolous litigation").

receiving facility.[25]  But this policy provision does not specify or mandate *how* the personal property will be transported.

DOC Policy Statement DC-ADM 815, which is publicly available and discusses—among other things—facility transfers, provides that, "when an inmate is scheduled for transfer to another facility," he will "be permitted a maximum of two records center boxes . . . for shipment on the bus/van."[26]  Any additional boxes "will be shipped by the least expensive common carrier available (U.S. Mail, UPS, etc.) to the receiving facility[.]"[27]  Simply put, McKee has not specified how many boxes of his personal property were transferred on February 1, 2023, and thus has not established that having his property shipped via UPS was "adverse" at all.[28]  Consequently, he has failed to state a plausible retaliation claim.

---

[25]  *See* Doc. 1 ¶ 34; Doc. 1-2 at 2.

[26]  *See* COMMW. OF PA., DEP'T OF CORR., *Policy Statement* DC-ADM 815: Personal Property, State Issued Items, and Commissary/Outside Purchases Procedures Manual, § 1(C)(4)(a) (2022), https://www.cor.pa.gov/About/Us/Documents/DOC%20Policies/815%20 Personal%20Property,%20State%20Issued%20Items%20and%20Commissary%20- %20Outside%20Purchases.pdf.

[27]  *Id.* § 1(C)(4)(b).

[28]  The Court further notes that, even if some of McKee's boxes of property were shipped through UPS rather than sent on the bus or van as provided by DC-ADM 815, it is questionable whether this conduct rises to the level of an "adverse action" that would deter an ordinary person from exercising their First Amendment rights.  *See, e.g.*, *Edwards v. Bayside State Prison*, No. 13-CV-0833, 2014 WL 6991463, at *4 (D.N.J. Dec. 10, 2014) (finding that "the pecuniary loss of a few hundred dollars' worth of property" by prisoner was not sufficient to deter a person of ordinary firmness from exercising First Amendment rights).

### B.      Official Capacity Claims

McKee sues Defendants in their individual and official capacities.[29] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[30]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[31]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[32]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[33]

McKee seeks unspecified compensatory and punitive damages.  To the extent those damages are sought against Defendants in their official capacities,

---

[29]   *See* Doc. 1 at p. 1 (caption).

[30]   U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[31]   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[32]   *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[33]   *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

such claims are barred by Eleventh Amendment sovereign immunity.  McKee's request for a declaration that his constitutional rights were violated is retrospective, rather than prospective, in nature.  Finally, McKee seeks prospective injunctive relief in the form of return of the $99.60 removed from his inmate account. However, as McKee has failed to state an underlying constitutional violation, his claim for prospective injunctive relief cannot withstand Rule 12(b)(6) scrutiny, either.  Thus, all official capacity claims must be dismissed for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Requested Relief

McKee seeks punitive damages.  The allegations in his complaint, however, do not implicate the type of "callous" or "malicious" conduct or "evil motive or intent" required for punitive damages to be available.[34]  Shipping an inmate's personal property via UPS as part of a facility transfer simply does not rise to the level of malicious conduct, nor does it reflect evil motive or intent.  Any claim for punitive damages, therefore, must also be dismissed pursuant to Section 1915(e)(2)(B)(ii).

### D.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment

---

[34]  *See Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006); *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996)).

would be inequitable or futile."[35]  McKee will be granted leave to amend in the event that he can plausibly plead additional facts that would state a First Amendment retaliation claim.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Leave to amend will be granted.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[35]   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).